NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

PATRICK FLANAGAN, PETITIONER, v. PUBLIC SERVICE RAILWAY COMPANY (IMPROPERLY IMPLEADED AS PUBLIC SERVICE CORPORATION), RESPONDENT.

For the petitioner, *Joseph J. Quinn.*

For the respondent, *Henry J. Sorenson.*

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The next question involved in this case was as to whether or not the petitioner suffered any permanent injuries as a result of this accident. In support of the contention that there was a permanent condition existing the petitioner produced Dr. Ford, who saw him at St. Michael's Hospital the day following the accident, at which time the petitioner was semi-conscious. Dr. Ford, at that time, made a diagnosis of an intercranial injury with probable fracture of the skull. Dr. Ford further testified that at the end of the fourth week the petitioner was discharged from the hospital. The next time Dr. Ford saw the petitioner was in January, 1928, at which time the petitioner showed evidence of a marked Romberg. The doctor admitted that the subjective symptoms were more prominent, and that he could not tell whether these symptoms were due to auto suggestion. The petitioner then produced Dr. Kessler, who testified that the petitioner's general condition was good; that there was no disturbance of the motor areas, and that the reflexes were normal, but that there was a disturbance of gait. This disturbance of gait might be due to an intercranial injury. Dr. Swain, the last witness produced by the petitioner, testified that he examined the petitioner on January 19th, 1928. The petitioner at that time had a tendency to fall to the right, and this was evidenced by an examination which was conducted in accordance with the Romberg tests. He also found that the petitioner on that date was suffering from an impairment of hearing which he characterized as diminished bone conduction. This condition may have been due to the accident, or it may have been due to disease. The respondent, in a proof of its contention that there were no permanent injuries existing in this patient as a result of the accident, produced Dr. Wyatt, a roentgenologist, who testified that he had X-rayed the head

of the petitioner, and the interpretation of these X-rays revealed that there was no evidence of a fracture of the skull.

Dr. Dias, a practicing physician in the State of New Jersey, was next produced by the respondent. This doctor testified that he specializes in the eye, ear, nose and throat. The examination of the eyes revealed that the pupils are of normal size, equal, and react normally to all stimuli. The eyelids, lachrymal apparatus and external ocular movements of each eye are normal. The fundus of each eye is normal. The ears showed a condition of chronic aural catarrh, which was of many years duration. The nasal septum was greatly thickened and deflected to both sides, in the form of a thick horizontal spur imbedded in the right inferior turbinal anteriorly, and the left inferior turbinal posteriorly. There is an intumescent rhinitis and a chronic catarrhal naso-pharyngitis. Dr. Dias then examined the petitioner with the use of the Barany revolving chair, which examination discloses that the organs of equillibration and their tracts in the brain are normal. There was no Romberg. The conclusion was that there is no permanent disability of the eyes, ears, nose or throat organs of equillibration, or their tracts in the brain, as a result of the injury.

Dr. Pascall testified that he examined the petitioner, and that as a result of the examination he found that this petitioner was not suffering from any permanent injuries as a result of an accident. At the examination the petitioner showed no tremors nor any Romberg. Petitioner weighs two hundred and eight pounds, and is the picture of health.

Dr. Washington examined the petitioner, and his examination discloses that there was no Romberg present, nor any signs of tremor. In his opinion there was no permanent injuries present.

Dr. Hicks, a psychiatrist and neurologist, practicing in the State of New Jersey, testified that he examined the petitioner on February 25th, 1927, and again on February 28th, 1927; that his examination disclosed that there was no abnormal condition of the five senses found, nor was there any

Romberg found at either of these examinations. Dr. Hicks, for the purpose of examining the petitioner as to his ability to distinguish various colors, placed an apparatus containing two lenses, which apparatus excluded all light about the head of the petitioner. He first put in lenses of various colors and finally put in two lenses which absolutely excluded all light. At this point of the examination he asked the petitioner, who, at that time was standing, whether he was in total darkness. The petitioner responded in the affirmative. At this time Dr. Hicks specifically noted that while the petitioner was standing in darkness there were no signs of Romberg present. Dr. Hicks testified that there were no permanent disabilities existent in the petitioner's case which were the result of an injury.

The petitioner resumed work for another employer in March, 1926, and has worked continuously since that time. From the date on which he resumed work until February 3d, 1927, the respondent was not aware of the fact that the petitioner was again at work. From the date of the accident to the 3d day of February, 1927, the respondent has paid to the petitioner the sum of $2,343.47.

The evidence in this case as produced by both the petitioner and the respondent presents a sharp factual question as to whether or not there was any permanent disability as a result of the alleged accident. It is my opinion that there is a small percentage of permanent disability as a result of this accident, but I also find that whatever the figure of percentage is, the petitioner has been amply covered by the compensation payments already paid. I am therefore compelled, under the evidence of this case, to deny the prayers of the petition.

\* \* \* \* \* \* \* \*

HARRY J. GOAS,
*Deputy Commissioner.*